**In the
UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **NOVELTY, INC.**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| *vs*. ) | CAUSE NO. 1:08-cv-0079-SEB-JMS |
| ) | |
| **JACOB'S PARADISE, INC.**, ) | |
| ) | |
| Defendant. ) | |

# E N T R Y

**Plaintiff's Motion for Partial Summary Judgment (doc. 63)**

According to the Complaint, Plaintiff Novelty, Inc. is "one of the largest distributors of products to convenience stores in the United States." Amended Complaint (doc. 50) ¶ 8. It distributes novelty-type items such as lighters, t-shirts, and hats to over 13,000 customers; it is also a licensed distributor for well-known companies, including Disney and Paramount Pictures. *Id*. Novelty owns the following six registered visual-arts copyrights covering graphic designs and, in one instance, a three-dimensional shape, relating to certain of its products and their associated packaging and displays:

    **VAu671-732**  **Coffin cigarette case**
                      Three-dimensional coffin shape of a cigarette case and two-dimensional graphic designs placed thereon (including a spider, sword, *cross pattée*, and skull and cross-bones) and on associated point-of-sale display container. (Doc. 50-2).

    **VAu639-161**  **Flask**
                      Two-dimensional graphic designs placed on stainless-steel, five-ounce flasks and associated display container. (Docs. 50-3 through 50-9).

    **VAu605-307**  **Flask Print**

                Two-dimensional graphic designs (including a flaming skull, flaming dice, fish, and flaming *cross pattée*) placed on stainless-steel, five-ounce flasks and associated display container.  (Docs. 50-10 and 50-11).

**VAu645-586**   **Shock Pen**
Two dimensional graphic designs placed on individual packages of "gag" electrically-shocking writing pens and associated display container. (Docs. 50-12 and 50-13).

**VAu645-584**   **Cigarette Safe Box**
Two dimensional graphic designs placed on cigarette cases and associated display container.  (Docs. 50-14 and 50-15).

**VA1-639-356**   **Bullet Pill Keeper**
Two-dimensional graphic designs placed on a display container for key chains attached to a bullet-shaped pill container.  (Docs. 50-16 through 50-18).

**VA1-623-535**   **Butterfly & Unicorn Artwork**
Two-dimensional graphic designs of a unicorn and a butterfly.  (Doc. 50-19 and 50-20).

**VAu638-757**   **Push Down Ashtray**
Two-dimensional graphic designs (including a dragon) placed on ashtrays. (Docs. 51-21 through 51-25).

Novelty claims that Defendant Jacob's Paradise, Inc., a competing national distributor of novelty items, has violated its intellectual property rights by copying, manufacturing, distributing, advertising, selling, and using its protected graphic designs.  In short, Novelty alleges that Jacob's Paradise has distributed and sold virtually identical "knock-offs" of its products, its displays and packaging, and/or its protected designs.  Novelty's complaint is in four counts:  Count 1 asserts federal copyright infringement, pursuant to 17 U.S.C. § 101 *et seq*.; Count 2 asserts false designation of origin, trade-dress infringement, and unfair competition under the federal Lanham Act, 15 U.S.C. § 1125(a); Count 3 asserts trademark infringement and unfair competition under Indiana common law; and Count 4 asserts a violation of Indiana's

Crime Victims Act, Ind. Code § 34-24-3-1. Novelty seeks an injunction against Jacob's Paradise's violations; destruction of all infringing products and materials; an accounting and payment of Jacob's Paradise's profits gained through its infringement; damages allowed under federal and state statutory and common law, including treble damages; attorney's fees; and costs.

Novelty now moves for partial summary judgment on Counts 1, 2, and 3. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### Count 1: Copyright Infringement

A valid copyright gives its owner exclusive rights regarding the copyrighted work, including the rights to reproduce and distribute the work and to prepare derivative works. 17 U.S.C. § 106(1)-(3). Any person who violates one of the exclusive rights of the owner infringes the copyright and the owner may institute an action against the infringer. 17 U.S.C. § 501(a) and (b). The parties agree that, in order to establish copyright infringement, Novelty must prove (1) that it owns valid copyrights, and (2) that Jacob's Paradise copied constituent elements of the copyrighted works that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506, 507 (7th Cir. 1994).

**Valid copyrights.** Novelty submitted evidence of Certificates of Registration for six copyrights applicable to the graphic designs at issue. These are *prima facie* evidence of the validity of the copyrights. 17 U.S.C. § 410(c); *Mid America Title Co. v. Kirk*, 59 F.3d 719, 721

(7th Cir.), *cert. denied*, 516 U.S. 990 (1995); *Wildlife Express*, 18 F.3d at 507. Jacob's Paradise attempts, but fails, to rebut this presumption. It alleges that Novelty's copyrights are invalid because Novelty used pre-existing artwork and third-party clip art in creating the designs at issue and failed to disclose those facts to the Copyright Office. (Defendant's Response (doc. 73) at 2). Jacob's Paradise argues that, "[w]ithout the addition of new features, there is not a new copyrightable work so Novelty's registrations are invalid." (*Id.* at 7). Jacob's Paradise contends that the Court of Appeals for the Seventh Circuit's "substantially different" test requires that, in order to be copyrightable, derivative works must comprise an original artistic addition to, or some substantial, non-trivial, variation from, the pre-existing works. (*Id.*, quoting *JCW Investments, Inc. v. Novelty, Inc.*, 289 F.Supp.2d 1023, 1033-35 (N.D. Ill. 2003) (citing *Gracen v. Bradford Exchange*, 698 F.2d 300, 302 (7th Cir. 1983))). It argues that Novelty failed to explain to the Copyright Office, at the time of registration, and to the Court, on the present motion, "how the variations create a separate work that is copyrightable." (*Id.* at 8).

Jacob's Paradise relies on the depositions of Mary Ann Burkhart, (doc. 73-2) at pp. 14-16, and Angela French, (doc. 73-3) at pp. 14-16, 25-26. (Response at 2). Apparently, both individuals are graphic artists employed (formerly or currently) by Novelty who were involved in creating some of the designs at issue.[1] Jacob's Paradise merely cited the deposition pages in general, without specifying the particular facts each individual related that it contends supports its allegations, but an examination of the transcripts reveals that they fail to support Jacob's Paradise's argument. While Ms. Burkhart testified that Novelty "did incorporate clip art in our

---

[1] The portions of the deposition transcripts identifying the deponents were not submitted and no additional explanations were provided in its brief.

designs when it was suitable", Burkhart Dep., p. 15 line 14, and that she was "sure" that art prepared by third parties would be incorporated, *id*., p. 16 lines 3-5, she denied that clip art or third-party art was used in the production of the designs for the Coffin Cigarette Case or its packaging. She testified that the entire packaging (aside from the fonts) was completely Novelty's work as were the spider, cross, and skull-and-crossbones sculptures or designs applied to the boxes. *Id*. at pp. 15-16. At most, she testified that she was not certain whether the sword design on the Coffin Cigarette Case was "derived from" clip art or was Novelty's own illustration. *Id.* In portions of her deposition not cited by Jacob's Paradise, but submitted on its motion, Ms. Burkhart testified that all other designs about which she was questioned were Novelty's own creations. *Id*., pp. 17-20. At no point did Ms. Burkhart testify that any clip art or third-party art was used in any of the designs at issue in this case. As such, her deposition also fails to provide evidence that any clip art or third-party art was used in the designs at issue without the addition of new features or without original artistic addition to, or some substantial, non-trivial, variation from, the pre-existing works.

Ms. French was asked about a skull design that was depicted on a flask that she had prepared herself. French Dep. at p. 14. She testified that the skull was "taken from" or "pulled" from skull artwork previously created by another artist at Novelty; she "adjusted" clip art of roses and added them to the design; and she added flames behind the skull, but she could not recall whether the flame design came with the skull or she added it herself. *Id*., p. 15. She testified that, by "clip art," she meant Novelty-owned clip art or online clip art that is either purchased or free. *Id*. She denied involvement with the Coffin Cigarette Case or its designs. *Id*., p. 25. Ms. French described that most clip art is "kind of rough," needs to be smoothed out

before use, and that clip art usually would not be used without being "manipulated into a new image." *Id.*, pp. 25-26. Finally, in the context of needing to smooth out or manipulate clip art before use, Ms. French testified that she recalled "doing one" where she used a unicorn horn on a real horse that she had to create using Photoshop software to make it look real, but she did not remember specifically a unicorn design that she was being shown at the time. *Id.*, p. 26. At most, Ms. French provided facts relating to only one of the many graphic designs at issue in this case and her testimony does not indicate that that one design was merely copied from clip art or third-party art without substantial artistic alteration and/or addition.

Neither Ms. Burkhart's nor Ms. French's depositions support Jacob's Paradise's allegation that Novelty's designs at issue in this case, protected by its six copyrights, were created merely from third-party art without the addition of new features or original artistic work, or some substantial, non-trivial, variation from the pre-existing works. Jacob's Paradise has not identified any pre-existing works underlying Novelty's designs or attempted any showing that, if such preexisting works exist, they exist without substantial difference, or artistic alteration, in the designs at issue. Therefore, Jacob's Paradise has failed to rebut the presumption of validity of Novelty's copyrights that arise from the Certificates of Registration.

**Copying.** "Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if the defendant did not copy the accused work, there is no infringement." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1169 (7th Cir. 1997) ("But identity is not infringement. The Copyright Act forbids only copying; if independent creation results in an

6

identical work, the creator of that work is free to sell it."). In the absence of rare direct evidence of copying, a plaintiff may take the circumstantial route by proving that defendant had access to its copyrighted work and that defendant's work is substantially similar to the copyrighted work. *Wildlife Express*, 18 F.3d at 508. "[T]he determination whether there is substantial similarity is made by the 'ordinary observer' test: 'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protective expression by taking material of substance of value.'" *Id.*, at 508-09.

Access may be shown by direct evidence, such as proof that plaintiff's work was sent to defendant, or that plaintiff's work was widely disseminated. *Selle*, 741 F.2d at 901. However, access itself may also be shown circumstantially:

> If, however, the plaintiff does not have direct evidence of access, then an inference of access may still be established circumstantially by proof of similarity which is so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded. If the plaintiff presents evidence of striking similarity sufficient to raise an inference of access, then copying is presumably proved simultaneously . . . .

*Id*.

> The more a work is both like an already copyrighted work *and* — for this is equally important — unlike anything that is in the public domain, the less likely it is to be an independent creation.
> 
> \*     \*     \*
> 
> If, therefore, two works are so similar as to make it highly probable that the later one is a copy of the earlier one, the issue of access need not be addressed separately, since if the later work was a copy its creator must have had access to the original. . . . [A] similarity that is so close as to be highly unlikely to have been an accident of independent creation *is* evidence of access.

*Ty*, 132 F.3d at 1169-70.

Proceeding circumstantially, Novelty alleges that Jacob's Paradise had access to its copyrighted designs because Novelty has exclusively used and advertised the designs; the designs were widely disseminated throughout the U. S. and China; Jacob's Paradise and its president have been in the business of importing and selling general merchandise since the 1970s; and Jacob's Paradise and its president were aware of Novelty and its operations prior to this lawsuit.  (Brief in Support (doc. 64) at 9).  Jacob's Paradise counters with its president Luis Arce's averment that "Jacob's was not aware of Novelty's designs at issue in this lawsuit until Novelty served the summons and complaint."  Affidavit of Luis Arce (doc. 73-6) ¶ 2.  The parties proceed to argue whether their products are substantially similar, with Novelty arguing that they are identical "knock-offs" and Jacob's Paradise arguing that there are differences and that, at any rate, the issue is one for the jury and Novelty has failed to establish the protectible, or copyrightable, elements of its designs.

This argument is largely inapposite, however.  Jacob's Paradise alleges that it neither created nor manufactured the products at issue, that it purchased the products from various manufacturers in China and the United States, and that it assumed that the manufacturers did not offer infringing products.  (Response at 2, citing Deposition of Luis Arce (doc. 73-4), Arce Affidavit, and Jacob's Paradise's Answers to Novelty's first set of interrogatories (doc. 73-5)).  Except with regard to one product line, which is discussed below, Novelty did not dispute Jacob's Paradise's assertions.  Not having "copied" Novelty's designs, therefore, Jacob's Paradise argues that it cannot be held liable for infringement.

Novelty correctly points out that, regardless of Jacob's Paradise's status as a

manufacturer, it is an infringer under the Copyright Act if it merely distributed copies of Novelty's copyrighted designs that were manufactured by a third party. 17 U.S.C. § 106(3) ("... the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: . . . to distribute copies . . . of the copyrighted work to the public . . . ."); 2 *Nimmer on Copyright* §§ 8.12[A] and [B][4][a] (2009). But Novelty must still prove that the allegedly infringing products were *copied* from its designs and, lacking direct evidence of copying by Jacob's Paradise's suppliers, Novelty must prove access to its designs by those suppliers (not by Jacob's Paradise) and it has presented no such evidence or allegation. Therefore, the only route open to Novelty is to show that the similarity between its designs and those distributed by Jacob's Paradise are "so striking that the possibilities of independent creation, coincidence, and prior common source are, as a practical matter, precluded."[2]

Novelty does make this argument, (Brief at 18), and, further, that it is an issue that the Court may decide on summary judgment, *Selle*, *supra*; however, we are unable to so conclude based on the submissions made by the parties. In the first place, Novelty submitted only photographs of its and Jacob's Paradise's products. The photographs of Novelty's products appear to be from its copyright registrations and the photographs of Jacob's Paradise's products appear to be pulled from Jacob's Paradise's catalogs and its website. Some of the photographs are in color, but many are not, and the poor quality of many of the photographs prevents the exacting type of comparison necessary to make the required rulings. While there appear to be substantial, perhaps striking, similarities in the products, we are hesitant to take the issues of

---

[2] Jacob's Paradise does not dispute that it has sold and offered for sale the allegedly infringing products.

9

striking similarity, access, and infringement from the jury based on the less-than-ideal quality of the photographs rather than by examining the actual products. In the second place, Novelty only *asserts* striking similarity and asks the Court to make a ruling simply by looking at side-by-side photographs of its products and Jacob's Paradise's products. (See table appearing at Complaint ¶ 10 and Brief at 5-8). Novelty fails to identify the specific design elements covered by its copyrights that it contends are copied in specific elements of Jacob's Paradise's products. Novelty's copyrights cover various graphic designs applied to products, packaging, and display containers, and, in one case, a copyright covers the three-dimensional shape of a product. The photographs submitted depict, for the most part, products in their display containers as they would sit on a point-of-sale counter, and it appears that Novelty contends that some of the protected design elements for its products are copied onto dissimilar products distributed by Jacob's Paradise, *e.g.*, emblems or designs applied to Novelty's cigarette cases might appear on Jacob's Paradise's flasks or other products. The Court can not be expected to scour through Novelty's photographs to pick and choose design elements — *e.g.*, depictions, shapes, colors, sizes, arrangements — that are copyrighted and strikingly similar. Novelty must make its own factual arguments.

Novelty challenges Jacob's Paradise's status as only a distributer with regard to one product line. It contends that Mr. Arce's testimony that Jacob's Paradise did not manufacture or create the infringing products is contradicted by his later testimony in the same deposition that "he and Jacobs' [*sic*] employees manufactured at least some of the infringing products." (Plaintiff's Reply (doc. 74) at 4). In his deposition, Mr. Arce is asked to clarify one part of Jacob's Paradise's answer to Novelty's interrogatory asking it to identify all persons or entities

that created the allegedly infringing designs that Jacob's Paradise distributed. Jacob's Paradise answered, in part, that it "assembled the Flask with Emblem from pieces manufactured by Wenzhou Phoenix Metal Mfy.", which is a Chinese company. Arce Dep. at pp. 125-26; Interrogatory no. 8 (doc. 73-5). Asked whether the answer meant that the pieces glued onto the flasks were made by Wenzhou, Mr. Arce answered that the "pieces" that Wenzhou supplied were only the flasks and that the glued "emblems" were his own: "He [Wenzhou] manufactured the flask, I put my own emblem." Arce Dep. at p. 125 lines 18-19. Mr. Arce was finally asked "Where did you get those pieces?", and he answered: "I bought them domestically." *Id*. at p. 126 lines 1-2. It is unclear whether these final "pieces," about which Mr. Arce was asked and which he answered were purchased domestically, refer to the flasks or the glued emblems. Novelty did not follow-up to clarify the matter or discover whether Jacob's Paradise was responsible for the design of the emblems (*i.e.*, copied the designs) that it purchased and glued to the flasks.

Novelty argues that this testimony shows manufacture and copying by Jacob's Paradise and, indeed, it might support such an inference. Therefore, the question of access by Jacob's Paradise to any of Novelty's designs that appear on the emblems may be an issue in the case, a disputed issue because Jacob's Paradise still alleges that it was unaware of Novelty's designs until this suit was filed. At any rate, if Novelty does not contend, or cannot show, that the emblem designs are strikingly similar to its copyrighted designs, then it may attempt to prove copying by proving access and substantial similarity, both of which are disputed.

Because the Court cannot determine whether Novelty's and Jacob's Paradise's designs

are striking similar based on the submitted evidence, and the material issues of access and substantial similarity are genuinely disputed on the submitted evidence, summary judgment cannot be granted on the issue of Jacob's Paradise's liability for copyright infringement under Count 1. The Court rules, however, that the validity of Novelty's six copyrights identified above are not genuinely at issue and shall be taken as established fact. Fed. R. Civ. P. 56(d)(1).

**Count 2: False Designation of Origin, Trade Dress Infringement, and Unfair Competition**
**Count 3: Common Law Trademark Infringement and Unfair Competition**

Novelty argued that Indiana's common law actions for trademark infringement and unfair competition are guided by the same principles as govern its federal Lanham Act claims, and it did not provide any separate substantive arguments for Count 3. (Brief at 28). Jacob's Paradise did not dispute Novelty's interpretation of the law governing Count 3 or provide any separate argument regarding that Count. Therefore, we address and treat them simultaneously below.

The parties agree on the law governing Count 2:

> It is well established that trade dress can be protected under federal law. The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods.

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28 (2001). "'Trade dress' is the 'total image or overall appearance of a product,' including size, shape, color, texture, and graphics." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 814 (7th Cir. 2002).

> A point of clarification is needed before proceeding further. Professor McCarthy tells us that, "While trade dress is most often defined as a totality of elements, there is no reason why the plaintiff cannot define a list of elements consisting of less than the totality of features appearing on a package or container." 1 J.

> Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:1 (4th ed.2001). Stated differently, "the plaintiff in a trade dress action under section 43(a) of the Lanham Act is free to seek trade dress protection for whatever products or packaging it sees fit." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 170, 173 (3d Cir.2000).

*Id.* at 813. The elements of a trade-dress infringement action are: (1) the trade dress is nonfunctional; (2) it is inherently distinctive or has acquired secondary meaning; and (3) there is a likelihood of confusion between the products. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-74 (1992). "'The "trade dress" of a product is essentially its total image and overall appearance.' It 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Id.*, at 764 n. 1.

Likelihood of confusion is shown by (1) similarity of the trade dresses, (2) the area and manner of concurrent use, including the similarity of the products on which the trade dresses are being used, (3) the degree of care likely to be exercised by consumers, (4) the strength of the plaintiff's trade dress, (5) actual confusion, and (6) whether defendant intended to pass off its product as that of plaintiff. *AM General*, 311 F.3d at 828. The similarity of the designs, the intent of the defendant, and evidence of actual confusion at the most important factors. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000).

Genuine disputes of material fact exist in this case which prevent granting summary judgment on Counts 2 and 3 in favor of Novelty. Among these is, first, the fact that the inherent distinctiveness or secondary meaning of Novelty's trade dress is genuinely disputed. Novelty's primary factual support for the distinctiveness or secondary meaning of its trade dresses is it's

13

vice president's declaration that Novelty's artists "strive to create designs that are unique and which the public will identify with Novelty", Merlau Declaration (doc. 64-2) ¶ 16, and that it is part of Novelty's business plan to utilize its own art department "to create the freshest, boldest and most unique designs for its products, displays and packaging, such as the Infringed Designs, so that the public will associate them with Novelty," *id.* ¶ 17. But what Novelty strives or intends to achieve is irrelevant; the question is whether the designs are, in fact, inherently distinctive or have, in fact, acquired secondary meaning in consumers' minds. Jacob's Paradise points out that none of Novelty's products, packaging, or displays identify to consumers that Novelty (or another trade name) is the source of the products at issue and that much of the information on the packaging and displays is generic or merely descriptive, rather than serving a source-identifying function. Jacob's Paradise argues that, by not serving a source-identifying function, Novelty's copyrighted designs are not likely to cause the required confusion as to the origin, sponsorship, or approval of the goods at issue. It is a jury question whether Novelty's copyrighted graphic designs are, in fact, inherently distinctive or have actually acquired secondary meaning in the minds of consumers.

Second, regarding the likelihood of confusion, it is a genuinely disputed material fact whether there are substantial similarities between the parties' products. As indicated above, on the evidence submitted on this motion, the Court cannot determine which design elements are at issue and which are substantially similar. Third, Novelty merely asserts, based on its own vice president's declaration, that Jacob's Paradise's products are sold in the same geographic area — broadly described as "across the U. S." — and in the same manner as Novelty's products. Without supporting evidence (or a stipulation by the parties), that fact cannot be determined on

summary judgment. Fourth, the parties disagree on the reasonable inference that can be drawn from the fact that consumers are unlikely to exercise a high degree of care in selecting the "impulse" products at issue: Novelty contends that such an inference confirms the importance of its trade dress while Jacob's Paradise contends that it lessens the utility of trade dress. The jury is charged with drawing the reasonable inferences, not the Court on summary judgment. A fifth genuine dispute of material fact is whether Jacob's Paradise intended to "pass off" its products as Novelty's. Jacob's Paradise submitted evidence that it was unaware of Novelty's copyrighted graphic designs until this lawsuit was filed, and Novelty merely asserts that Jacob's Paradise intended to do so, without citing any direct evidence in support. Novelty argues that Jacob's Paradise's intent may circumstantially be inferred "from Novelty's prior successful use of the trade dress and the similarity of the trade dress." (Brief at 26). However, except for Jacob's Paradise's flask-with-emblem product, Novelty did not contest Jacob's Paradise's allegation that it merely distributed the allegedly infringing products that it purchased from third parties and was not aware of Novelty's products. This dispute must also be resolved at trial.

Because genuine disputes of material fact exist, summary judgment cannot be granted in favor of Novelty on Counts 2 and 3.

**Affirmative defenses**

Novelty also seeks summary judgment on all of Jacob's Paradise's affirmative defenses because it "only asserted naked allegations in its discovery responses, and notwithstanding Novelty's attempts, Defendant has not established ANY affirmative defense at all." (Brief at 29). It contends that it "challenged Jacobs to come forth with evidence establishing each of its

affirmative defenses (and counterclaims)" and "failure by Jacobs to proffer evidence on any such defenses and counterclaims entitled Novelty to summary judgment on the same." (Reply at 9). Novelty complains that, despite specific discovery requests, Jacob's Paradise has failed to provide the evidentiary bases for its affirmative defenses, giving only bare-bones conclusions in its responses and synopsis of its case in the case management plan.

Jacob's Paradise argues that Novelty failed in its initial responsibility to inform the Court of the basis for its motion by demonstrating the absence of a genuine dispute of material fact regarding its affirmative defenses; instead, Jacob's Paradise contends that Novelty merely asserts its conclusions without explanation and without even identifying the specific affirmative defenses which have been asserted. (Response at 13-14). It further argues that Novelty's motion amounts to a mere challenge to produce evidence which is an insufficient basis on which to grant summary judgment. Jacob's Paradise states that:

> Even if this conclusory analysis would meet Novelty's initial responsibility, Jacob's has specifically set forth facts above (both undisputed and disputed) that raise genuine issues of material facts, precluding the entry of summary judgment on Jacob's affirmative defenses.
>
> As discussed above, Jacob's has shown that (i) Novelty's claims fail to state facts sufficient to constitute a claim for relief, (ii) Jacob's does not infringe Novelty's copyrights, (iii) Novelty's copyright registrations are invalid, (iv) Novelty obtained its copyright registrations via fraud on the Copyright Office, and (v) Novelty lacks sufficient rights in its trademarks or trade dress to state a claim under the Lanham Act.

(Response at 14).

Jacob's Paradise does not contend that it has made a sufficient showing regarding an affirmative defense of lack of personal jurisdiction, Answer (doc. 52), First Affirmative Defense;

16

venue, 2nd Aff. Def.; statute of limitations, 7th Aff. Def.; laches, 8th Aff. Def.; delayed too long to obtain injunctive relief, 9th Aff. Def.; acquiescence, 10th Aff. Def.; waiver, 11th Aff. Def.; unclean hands, 12th Aff. Def.; estoppel, 13th Aff. Def.; and failure to mitigate damages, 14th Aff. Def. Jacob's Paradise has not provided, either in discovery, earlier filings, or on the present motion, any factual or legal bases which would allow it to prevail on these defenses. Our earlier ruling that the validity of Novelty's six copyrights is not genuinely at issue and shall be taken as established fact also applies to Jacob's Paradise's fifth and sixth affirmative defenses, each of which asserts such invalidity. Therefore, we find and conclude that summary judgment is proper in favor of Novelty on each of these affirmative defenses. Because Novelty's third, fourth, and fifteenth affirmative defenses are fairly within — and only to the extent that they are fairly within — its arguments on the present motion, summary judgment is denied as to each of them.

Summary judgment is therefore granted in favor of Novelty on Jacob's Paradise's first, second, and fifth through fourteenth affirmative defenses.

## Conclusion

Plaintiff Novelty's motion for partial summary judgment (doc. 63) is **granted in part** and **denied in part** as set forth herein. Summary judgment is **denied** as to Counts 1, 2, and 3 of Novelty's First Amended Complaint (doc. 50). Summary judgment is **granted** in favor of Plaintiff Novelty and against Defendant Jacob's Paradise on affirmative defenses 1, 2, and 5 through 14 of Defendant Jacob's Paradise's Answer to First Amended Complaint (doc. 52). Pursuant to Fed. R. Civ. P. 56(d)(1) it is further ordered that the validity of Novelty's copyrights VAu671-732, VAu639-161, VAu605-307, VAu645-586, VAu645-584, VA1-639-356, VA1-

623-535, and VAu638-757 are not genuinely at issue and must be treated as established in this action. The Indiana common law claims have not been reviewed or passed on by the Court and thus remain a part of this litigation for resolution at trial.

IT IS SO ORDERED.

Date: 10/26/2009

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

James Dimos
FROST BROWN TODD LLC
jdimos@fbtlaw.com

Eric E. Lamb
OVERHAUSER & LINDMAN, LLC
elamb@overhauser.com

Tami L. Napier
OVERHAUSER & LINDMAN, LLC
tnapier@overhauser.com

Paul B. Overhauser
OVERHAUSER & LINDMAN, LLC
poverhauser@overhauser.com